# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MOSE H. TALLCHIEF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-1093-KGG |
| | ) |
| TRAVIS JOHN HADEN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER DISMISSING CASE FOR LACK OF JURISDICTION

This case comes before the Court on Defendant's Motion to Dismiss (Doc. 51), which has been fully briefed and is ripe for decision. (Docs. 52, 55, 56). Defendant's motion is **GRANTED** because the Court find it lacks subject matter jurisdiction.

## I.    Facts and Procedural History

Plaintiff has brought the present negligence action alleging injuries sustained in an automobile accident that occurred on June 23, 2010, in Cowley County, Kansas. (Doc. 1.) Defendant moves to dismiss Plaintiff's Complaint, arguing it is deficient on its face because Plaintiff has failed to allege domicile or citizenship in Oklahoma, which is necessary to establish the Court's diversity jurisdiction. Defendant also claims that the Plaintiff was factually a resident of Kansas at the

1

time this action was filed, thus depriving the Court of subject-matter jurisdiction. (*See generally* Docs. 51, 52.) The Plaintiff concedes that he was a Kansas domiciliary at the time of the accident, but contends that his domicile changed to Oklahoma prior to filing the Complaint. (*See generally* Doc. 55).

Plaintiff owns a residence in Wichita, Kansas, with his son. (Doc. 52, at 3.) The house was purchased by Plaintiff's deceased wife before they were married in 1977. (Doc. 55, at 3.)

Plaintiff lists a current address in Fairfax, Oklahoma. (Doc. 52, at 3.) He inherited this property from his father in 1948. (Doc. 55, at 2.) The tax statements for this property, however, are sent to Plaintiff at a Wichita, Kansas, P.O. Box address. (Doc. 52, at 3.) When Plaintiff filed bankruptcy in October 2010 – which he filed in Wichita, Kansas – he listed his Kansas, not his Oklahoma, property as his homestead. (Doc. 52, at 5.) His bankruptcy documents also list various Kansas bank accounts, but none in Oklahoma. (Doc. 52, at 6.)

Plaintiff contends that he lived in the Wichita home until his wife was placed in a nursing home in 2005. (Doc. 55, at 4.) At that point, he began spending half of his time in Oklahoma and the other half in Wichita. (Doc. 55, at 4.) Plaintiff contends that he "always planned to move back to the family's land in Oklahoma and did so after the accident, before the suit was filed." (Doc. 55, at 2.) He estimates that since he got out of the hospital after the accident at issue, he has

spent 60% of this time in Oklahoma and 40% in Wichita. (Doc. 52, at 4.) Two trailers and a barn are located on the Oklahoma property; Plaintiff contends that he lives in the larger trailer, which has a bedroom, kitchen, bathroom, office, and laundry facilities. (Doc. 55, at 2, 3.) The larger trailer was moved to the property in 2012 before the lawsuit was filed and contains various of Plaintiff's personal belongs. (Doc. 55, at 3.) Plaintiff's three horses are also kept on the property along with his dog. (Doc. 55, at 3.)

All of Plaintiff's health care providers (including dental, vision, and audiology) are in Wichita, Kansas. (Doc. 52, at 7.) This is true for both before and after the accident at issue. (Doc. 52, at 7.) He continues to use only pharmacies in Wichita, Kansas. (Doc. 52, at 8.) As of March 28, 2012 – less than two weeks after the Complaint at issue was filed – Plaintiff listed his address as 3557 S. Osage in Wichita, Kansas, along with a Kansas telephone number in a form he filled out for Grene Vision Group, a Wichita eye doctor. (Doc. 52, at 9.) He did the same with a form filled out for a cardiology appointment in Wichita in May 2012. Plaintiff's Medicare claims are processed by an insurance company that services Iowa, Kansas, Missouri, and Nebraska – not Oklahoma. (Doc. 52, at 10.)

Plaintiff is registered to vote in Kansas and has been since at least April 1996. (*Id.*, at 9.) He does, however, attend Osage Nation Agency and Osage Mineral Council meetings in Oklahoma, and votes in tribal elections. (Doc. 55, at

3.) Plaintiff was driving a vehicle with an "Osage Nation" Oklahoma license plate at the time of the accident. (Doc. 55, at 3.)

**II.     Motion to Dismiss Standards: FRCP 12(b)(1)**.

Federal courts are courts of limited jurisdiction, available to exercise their power only when specifically authorized to do so. ***Lindstrom v. United States***, 510 F.3d 1191, 1193 (10th Cir. 2007). Pursuant to the Federal Rules of Civil Procedure, a party may move for dismissal based upon a court's "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). Plaintiff has the burden to show that the Court has subject matter jurisdiction over his claims. ***U.S. ex rel Stone v. Rockwell Intern. Corp***., 282 F.3d 787, 798 (10th Cir. 2002).

The Tenth Circuit has noted that Rule 12(b)(1) motions may take on two forms, either a "facial" attack or a "factual" attack. ***Paper, Allied–Indust., Chemical & Energy Workers Int'l Union v. Continental Carbon Co***., 428 F.3d 1285, 1292 (10th Cir. 2005).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. ***Ohio Nat'l Life Ins. Co. v. United States***, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id*.
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id*. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id*. A court has wide

4

> discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.*; *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Wheeler*, 825 F.2d at 259 n.5.

*Smith v. Belcher*, No. 11-3060, 2012 WL 137879, at *2 (D. Kan. Jan. 18, 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)).

In the present matter, Defendant is making both a facial and factual attack on Plaintiff's claims. (Doc. 52, at 13-14.) Defendant contends that Plaintiff's Complaint is facially deficient because he "has failed to properly allege completely diversity of citizenship, as Plaintiff has not alleged domicile or citizenship in Oklahoma." (Doc. 52, at 1.) Defendant further alleges that an examination of the facts fails to "establish by a preponderance of evidence that [Plaintiff] is a citizen of Oklahoma and not Kansas," thus denying this Court of diversity jurisdiction. (*Id.*)

### III. Plaintiff's Complaint Fails on a Facial Basis.

The Court agrees with Defendant's contention that the Complaint does not facially allege that Plaintiff is a citizen of, or domiciled in, Oklahoma. (*See* Doc. 52, at 13.) Rather, the Complaint states that "is a resident of Oklahoma." (Doc. 1, at ¶ 1.) Plaintiff concedes that he "should have been more careful about preparing the Complaint." (Doc. 55, at 9.) Even so, Plaintiff contends that the language of

5

the Complaint is superseded by the Pretrial Order, which states that "[s]ubject matter jurisdiction is invoked under 28 U.S.C. 1332 and is disputed."[1] (Doc. 55, at 9; Doc. 50, at 2.)

The Court notes that the Complaint also fails to allege Defendant's citizenship. (*See generally* Doc. 1.) Based upon the arguments presented, the parties appear to be acting under the assumption that Defendant is a citizen of Kansas. Such an assumption is not, however, sufficient to establish the diversity of the parties and, thus, the Court's jurisdiction. Plaintiff's Complaint should be dismissed for this technical reason alone. Assuming for the purposes of this motion that Defendant is a Kansas domiciliary, the Court will also address the underlying substantive issue of whether there is sufficient evidence to establish that Plaintiff was domiciled in Oklahoma at the time the present lawsuit was filed.

### IV. Plaintiff's Complaint Fails on a Factual Basis.

Defendant's factual attack on Plaintiff's Complaint focuses on the issue of domicile/citizenship vs. residence. The issue was addressed in this District in the matter of ***Lloyd v. Loy***, No. 01-2001-KHV, 2001 WL 950261 (D. Kan. July 23, 2001). In that case, the District Court was tasked with determining whether a plaintiff, who had lived and worked in Kansas but who moved to Missouri in order

---

[1] 28 U.S.C. §1332 is the statute requiring a diversity of citizenship or domicile.

to create diversity jurisdiction for purposes of his lawsuit, had become a Missouri domiciliary.

> Diversity of citizenship is determined at the time the complaint is filed, and it is based on the domicile of the parties. *See* ***Stucky v. Bates***, 2 F.Supp.2d 1434, 1437 (D.Kan.1998) (citing ***Freeport- McMoRan, Inc., v. K N Energy, Inc.***, 498 U.S. 426, 428 (1991), and ***Crowley v. Glaze***, 710 F.2d 676, 678 (10th Cir. 1983)). To establish domicile, a party must have physical presence in a location and an intent to remain there indefinitely. *See* ***Stucky***, 2 F.Supp.2d at 1437 (citing ***Miss. Band of Choctaw Indians v. Holyfield***, 490 U.S. 30, 48 (1989)). The place where a person lives is assumed to be his domicile unless the evidence establishes the contrary. *See* ***District of Columbia v. Murphy***, 314 U.S. 441, 455 (1941); *see also* ***State Farm Mut. Auto. Ins. Co. v. Dyer***, 19 F.3d 514, 520 (10th Cir. 1994) (a person's residence is his *prima facie* domicile). The law, however, 'favor[s] an established domicile over a newly acquired one.' ***Stucky***, 2 F.Supp.2d at 1437 (citing ***Bair v. Peck***, 738 F.Supp. 1354, 1356 (D.Kan.1990)); *see also* ***Janis v. Story & Assoc.***, 124 F.3d 216, 1997 WL 545569, at *3 (10th Cir. Sept. 4, 1997); ***Abercrombie v. Sigler***, No. 87–2358–S, 1988 WL 212479, at *2 (D.Kan. Aug. 25, 1988).
>
> . . . Because complete diversity is required, diversity jurisdiction is not present if defendants and plaintiff were domiciled in the same state. *See* ***Asselin v. Shawnee Mission Med. Ctr.***, 894 F.Supp. 1479, 1484 (D. Kan. 1995) (citing ***Knoll v. Knoll***, 350 F.2d 407, 407 (10th Cir. 1965)). Plaintiff, however, contends that he moved from Kansas to Missouri before he filed his complaint. A change of domicile is valid even if done for the purpose of creating diversity, ***Bank One, Texas, N.A. v. Montle***, 964 F.2d 48, 53 (1st Cir. 1992), and no minimum period of residence is required. *See* ***Morris v. Gilmer***, 129 U.S. 315, 328 (1889). Plaintiff need not

intend to remain permanently in his new domicile. *See Crowley*, 710 F.2d at 678. It is enough to have a 'floating intention' to stay indefinitely and also have the general desire to return to the former domicile at some undetermined point of time. *Id*. It is not sufficient, however, to have the existing intention to return upon the happening of a reasonably foreseeable event. *See Gates v. Comm'r of Internal Revenue*, 199 F.2d 291, 294 (10th Cir. 1952).

. . .

. . . Where it appears that a party may have more than one residence, the Court uses a "totality of evidence" approach to ascertain the intended domicile. *See Cressler v. Neuenschwander*, 930 F.Supp. 1458, 1460 (D. Kan.1996) (citing *Hicks v. Brophy*, 839 F.Supp. 948, 950–51 (D. Conn. 1993)). Factors which the Court considers in determining a party's intent include the following:

> 1. Whether or not an individual votes where he claims domicile;
>
> 2. The manner in which an individual lives, taken in connection with his station in life, i.e., whether he rents or buys a home;
>
> 3. Whether his family and dependents have moved to the new residence;
>
> 4. Whether an individual's belongings have been moved to the new residence;
>
> 5. One's relationships with churches, clubs, and investments in the new residence;
>
> 6. Whether or not a place of abode is retained in the old state of residence;

> 7. Whether or not investments in local property or enterprise attach one to the former residence;
>
> 8. Whether one retains affiliations with professional, religious and fraternal life of the former community; and
>
> 9. What domicile is claimed for tax purposes.
>
> *Cressler*, 930 F.Supp. at 1460. Statements of intent are accorded minimal weight relative to these objective factors. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir.1985).

*Lloyd*, 2001 WL 950261, at 2-3.

The Complaint at issue was filed on March 19, 2012. The Court's analysis will, therefore, be concerned with Plaintiff's domicile and/or citizenship at that time. Most of the facts alleged by the parties are uncontroverted, including the fact that Plaintiff has always had residences in both Kansas and Oklahoma. Unfortunately, a dearth of evidence has been presented relating to Plaintiff's domicile as of the date the Complaint was filed. Further, some of the evidence provided to the Court relates to a specific time that does not necessary correlate to the time frame during which Plaintiff is alleged to have changed his domicile to Oklahoma. As such, absent specific evidence of a change in circumstances, the Court can only surmise that facts alleged to exist prior to the accident remained the same through the time Plaintiff is alleged to have changed his domicile to Oklahoma. The Court will, therefore, analyze the entirety of the evidence

9

presented in an effort to determine Plaintiff's domicile – and intentions regarding the issue – as of the date his Complaint was filed.

The parties agree that at the time of the accident in 2010 the Plaintiff was a Kansas resident. His bankruptcy filing, his 2010 driver's license and his voting registration leave no room for doubt. The issue, then, is whether the Plaintiff has presented evidence that his domicile changed between that time and the time this action was filed in 2012. The Plaintiff bears the burden of establishing the change.

Plaintiff contends that he "always planned to move back to the family's land in Oklahoma and did so after the accident, before the suit was filed." (Doc. 55, at 2.) There is, however, little objective evidence to establish the veracity of this self-serving statement. As stated above, "[s]tatements of intent are accorded minimal weight relative to . . . objective factors" evidencing a party's intent. *Lloyd*, 2001 WL 950261, at *3 (citing *Freeman v. Northwest Acceptance Corp*., 754 F.2d 553, 556 (5th Cir.1985)).

It is uncontroverted that Plaintiff lived in Wichita until his wife was placed in a nursing home in 2005, after which time he began splitting his time between Wichita and his residence in Oklahoma. It is important to note that Plaintiff did not acquire the Oklahoma property in conjunction with his change of domicile. Rather he has owned it since 1948 and he alleges to have been spending approximately half of his time there at the time of the accident.

Plaintiff estimates that since he got out of the hospital after the accident at issue, he has spent 60% of this time in Oklahoma and 40% in Wichita. (Doc. 52, at 4.) The Court notes that a 50/50 split does not differ significantly from 60/40. Without an effort by Plaintiff to specifically document or prove where his time has been spent, the Court is not satisfied that this conclusory statement has significant evidentiary value. *Lloyd*, 2001 WL 950261, at *3 (internal citation omitted).

In his brief, Plaintiff describes the trailer in which he lives on the Oklahoma property, which apparently contains various of his personal belongings. Plaintiff states that the trailer was moved to the property in 2012 before the lawsuit was filed. This is the single objective thread tethering Plaintiff's claim that his domicile changed to any action on his part. The trailer is on property the plaintiff already owned, has another trailer, and upon which he already resided on occasion. This upgrade of conditions does not, in the face of the other facts, prove a change of domicile.

Plaintiff also contends that his three horses and dog are also kept on the property. However, there is no evidence as to when that began, or whether that represented a change in pre-2012 arrangements.

While Plaintiff votes relating to Osage tribal issues in Oklahoma, there is no evidence that this was a new development made in conjunction with an attempt to change his domicile to Oklahoma. There is no evidence that Plaintiff had to

complete any type of voting registration for the tribe at the time he contends to have changed his domicile from Kansas to Oklahoma. Further, he has remained a registered voter in Kansas since at least 2006 for the purposes of state, local, and federal (non-tribal) elections. There is no evidence of any attempt by the Plaintiff to register to vote in Oklahoma.

Finally, the Court notes that Plaintiff arrived at the deposition in an automobile with an Oklahoma license plate from the Osage Nation. This was not a change of status from the date of the accident, which was before he claims his domicile changed. The Court has been presented with no evidence as to whether Plaintiff historically registered a vehicle through the tribe while he lived in Wichita or whether he changed the registration only after he made a conscious decision to change his domicile to Oklahoma.

In *Lloyd*, the plaintiff's change of voter registration and procurement of Missouri vehicle tags were found to be insufficient "to overcome the presumption of an established residence over a new one." 2001 WL 950261, at *4. In the matter before the Court, the only evidence supporting an alleged change of domicile is Plaintiff's self-serving statement that he started spending 10% more time at his pre-existing Oklahoma residence prior to filing the Complaint, all the while maintaining his Kansas residence. Aside from moving the second trailer to the property, there is no evidence of objective changes to his life, routine, or status.

To the contrary, Plaintiff's billing address remained in Kansas, he continued seeing health care professionals in Kansas, he continued using pharmacies in Kansas, and his Medicare benefits were processed by the insurer for the territory in which Kansas (not Oklahoma) is located.

As stated previously, "[t]he law . . . 'favor[s] an established domicile over a newly acquired one.'" *Lloyd*, 2001 WL 950261, at *2 (citing *Stucky*, 2 F.Supp.2d at 1437; *Janis*, 124 F.3d 216; *Abercrombie*, 1988 WL 212479, at *2). Based on the information presented to the Court, Plaintiff has not met his burden to establish by a preponderance of the evidence facts supporting the exercise of diversity jurisdiction. *See Lloyd*, 2001 WL 950261, at *2 (citing *Marcotte v. State Farm Fire & Cas. Co.*, 4 F.Supp.2d 1280 (D.Kan.1998) (failure to vote, pay utility or tax bills, form professional, social or religious connections, buy property or move personal items meant plaintiff had not established new residence); *Callicrate v. Farmland Indus., Inc.*, No. 93–1455–PEK, 1995 WL 463664, at *5 (D.Kan. July 31, 1995) (self-serving statements, driver's license, voter registration and sporadic trips to state are not enough to overcome presumption of established residence when majority of time was spent in other state with family)).

Defendant's motion (Doc. 51) is, therefore, **GRANTED**. This action is **DISMISSED** for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

Dated this 15th day of May, 2013, at Wichita, Kansas.

                                             S/ KENNETH G. GALE
                                             HON. KENNETH G. GALE
                                             U.S. MAGISTRATE JUDGE